**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| The Pinal Creek Group, et al., | ) | No. CV-91-1764-PHX-DAE-(LOA) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Newmont Mining Corp, et al., | ) | |
| Defendant. | ) | |

This matter arises on Plaintiff BHP Copper, Inc.'s ("BHP") Motion To Compel Production Of Experts' Work Files In The Possession Of Golder Associates, Inc. (docket # 1752), filed on April 25, 2006, from Plaintiff Phelps Dodge Miami, Inc. and Plaintiff Inspiration Consolidated Copper Company ("PDMI/Inspiration"). Although PDMI/Inspiration and BHP are Plaintiffs in this lawsuit, each Plaintiff is also a Cross Defendant and asserts claims dramatically adverse to the other on issues related to allocation and contribution.[1] (docket # 1713 at 3)  None of the Defendants have joined in the subject motion. The non-jury Phase II trial is presently scheduled to begin on or about

---

[1] Per the parties, "the primary allocation issue in the Phase II trial concerns the relative contribution of contaminants from Property A and Property B as between the Property A Parties (PDMI and Inspiration) and the Property B Parties (BHP and CanadianOxy)." (docket # 1713 at 3)

October 30, 2006 before the Hon. David A. Ezra for a maximum of 25 trial days.[2] (docket # 1715)

In addition to the subject Motion, the Court has reviewed the following: BHP's required certifications pursuant to Rule 37(a)(2), Fed.R.Civ.P., and LRCiv 7.2(j) regarding discovery disputes (dockets # 1754 and # 1753, respectively); PDMI/Inspiration's timely Response (docket # 1760) in opposition thereto, filed on May 8, 2006; BHP's Reply (docket # 1761), filed May 12, 2006; PDMI/Inspiration's unauthorized Supplemental Exhibit To Their Response to BHP's Motion To Compel (docket # 1762) which in reality is a surrebuttal pleading[3], filed on May 15, 2006; BHP's Response To PDMI/Inspiration's Supplemental Exhibit To BHP's Motion To Compel (docket # 1768) and Notice of Errata etc. (docket # 1771), filed on May 23, 2006 and June 6, 2006, respectively; and many of the approximately 12 inches of exhibits provided by both sides.

## BACKGROUND

Plaintiffs bring this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§9601-9675 ("CERCLA") and the Arizona Water Quality Assurance Revolving Fund, Ariz. Rev. Stat. §§49-201-49-298 ("WQARF") to recover past "response costs" for the cleanup of the Pinal Creek Drainage Basin, located near Miami, Arizona, and for declaratory and monetary relief regarding past and future groundwater remediation costs. The Pinal Creek Site has been contaminated for nearly 100 years by mining practices at various locations by different mine operators. The parties' familiarity with the complex facts and various claims and crossclaims since the filing of this suit over fourteen (14) years ago obviates the need for further discussion by the Court for purposes of ruling on this discovery motion.

---

[2] The parties have stipulated to the trial beginning on October 30, 2006 or the first available date following this date. (docket # 1714 at 6)

[3] Rather than striking PDMI/Inspiration's unauthorized pleading and attempt to have the last word, the Court will consider it and BHP's Response thereto on the merits of the subject Motion.

In the pending Motion to Compel, BHP seeks production of seven (7) separate categories of documents "related to the technical work performed by PDMI/Inspiration's litigation consultant and technical strategist, Golder Associates, Inc. ("Golder"), for their three testifying experts and their resultant reports." (docket # 1752 at 1) PDMI/Inspiration's three testifying experts are: (1) Dr. C.W. Fetter, Jr. ("Fetter"), (2) Craig M. Bethke ("Bethke"), and (3) Adrian Brown ("Brown"). BHP argues that PDMI/Inspiration is "circumvent[ing] their discovery obligations by simply and intentionally using litigation consultants as assistants to their experts and then declaring that their experts' assistants' work files do not have to be produced under the 'work product' protection." (Id. at 2)

BHP seeks an order compelling the following categories of documents prepared by or located in the files of PDMI/Inspiration's litigation consultants and non-testifying experts (Golder) related to Golder's technical work performed for Fedder, Bethke and Brown:

A. All communications between Golder and Fedder, Bethke and Brown since June 1, 2003 (close of discovery);

B. All documents in Golder's files related to the work Golder performed for Fedder, Bethke and Brown since June 1, 2003;

C. All documents in Golder's files related to specific tasks identified in Fedder's, Bethke's and Brown's reports as being assigned by any of them to Golder;

D. All documents in hard copy and digital format placed on Golder's FTP site related to Golder's work accessible to Fedder, Bethke and Brown since June 1, 2003;

E. All Golder documents conveyed to Fedder, Bethke and Brown, directly or indirectly, by Golder or a third party, including PDMI/Inspiration's personnel and attorneys, since June 1, 2003;

F. All communications between Golder and PDMI/Inspiration's attorneys related to Golder's work for Fedder, Bethke and Brown including work related to the experts' reports;

G. All Golder's unredacted invoices that relate to Golder's work for Fedder, Bethke and Brown; and

H. Per the arguments made in BHP's Response To PDMI/Inspiration's Supplemental Exhibit etc., filed after Bethke's May 17, 2006 deposition, BHP likely seeks all documents in Bethke's and Golder's possession showing the integrated licensing agreements and business relationship between Bethke and Golder outside their relationship in this case including documents evidencing the royalty and consultant payments thereon to Bethke and Golder.[4]

BHP argues that it "needs the Golder documents to test the legitimacy and quality of the Golder work upon which the three PDMI/Inspiration experts claim they relied in forming their opinions." (docket # 1761 at 4) BHP "claims that PDMI/Inspiration are improperly manipulating the 'work product' doctrine to prevent BHP from having access to documents directly relevant to the expert opinions of PDMI/Inspiration's three testifying experts." BHP's Reply clarifies the reason it seeks this discovery: "BHP has fully developed its case. BHP does not seek to build its own case from Golder's work but rather wants to meaningfully cross examine Fetter about Golder's work which is essential to Fetter's opinions[,]" citing Derrickson v. Circuit City Stores, Inc., 1999 WL 1456538 (D. Md. 1999) and other cases. (Id. at 10)

PDMI and Inspiration argue in opposition that BHP "demands core work product from the files of PDMI's and Inspiration's non-testifying experts, Golder Associates, including communications between these litigation consultants and PDMI's and Inspiration's counsel. . . ." (docket # 1760 at 1 - 2) PDMI/Inspiration asserts that the documents BHP seeks "have never been provided to, or reviewed by [PDMI/Inspiration's] testifying experts" and "[a]ll of the work Golder performed for the experts has been fully disclosed." They argue

---

[4] BHP's Response To PDMI/Inspiration's Supplemental Exhibit etc., filed after Bethke's May 17, 2006, indicates that these documents are relevant to Bethke's bias and "calls directly into question the independent integrity of Dr. Bethke's opinions in this matter." (docket # 1768 at 4)

- 4 -

1  that BHP's "real goal is to obtain documents that reveal mental impressions, theories, and
2  legal strategy[.]"  PDMI/Inspiration contends that the documents BHP seeks do not fall
3  within the production mandate of Fed.R.Civ.P. 26(a)(2) requiring production of any
4  information provided to a testifying expert; is protected from discovery by the work product
5  privilege and Rule 26(b)(1), FED.R.CIV.P.; and that exceptional circumstances do not exist
6  to warrant production of all the documents and the depositions of Golder personnel that BHP
7  seeks pursuant to Rule 26(b)(3) and Rule 26(b)(4)(B).

8  　　　　PDMI/Inspiration claim that they have already produced to BHP all documents
9  and materials described in three of the seven categories identified by BHP: category A
10 (communications between Golder and the testifying experts), category D (documents made
11 available to experts on Golder's File Transfer Protocol ("FTP")), and category E (all Golder
12 documents conveyed to the experts directly or indirectly).  (Id.)  PDMI/Inspiration asserts
13 that only three categories[5] of documents are at issue here: category C (Golder internal files
14 related to tasks performed for the experts, but not provided to the testifying experts), category
15 F (Golder's privileged communications with counsel which PDMI/Inspiration asserts was not
16 provided to testifying experts), and category G (Golder's "unredacted" invoices which
17 PDMI/Inspiration asserts have not been provided to the testifying experts).

18 　　　　BHP's Reply argues that "just like the Wizard of Oz, PDMI/Inspiration tells
19 BHP and this Court to 'pay no attention to the man behind the curtain[]'" because "[a]lmost
20 all of the opinions that Fetter expresses in his Supplemental Report, including representations
21 in his charts and tables, are based on data and analyses from Golder."  (docket # 1761 at 2)
22 BHP frequently cites the record to support its claims of the relationship between Golder and
23 Fetter and gives several examples, such as, Fetter's reliance upon Golder's expertise to
24 conduct the mass flux analysis for Bloody Tanks Wash, mass removal analysis from Kiser
25 Basin, Golder's calculation that the mass flux from Webster Gulch was 57 pounds per day
26

---

27,28  [5] PDMI/Inspiration apparently overlooks category B (All documents in Golder's files related to the work Golder performed for Fedder, Bethke and Brown since June 1, 2003).

- 5 -

1  from 1994 to 2002, and that certain data collected before 1989 is unreliable. (Id. at 2 - 4).
2  BHP argues that it cannot adequately test Fetter's, Bethke's and Brown's reliance on Golder's
3  data and analysis without knowing what exactly Golder did and only Golder's files have this
4  information. To justify why exceptional circumstances exist to warrant discovery of Golder's
5  files, BHP points out, for example, that Fetter cannot explain how Golder performed the
6  work he requested because Fetter does not know. (Id. at 3) Fetter does not know what steps
7  Golder took to mine data from the Pinal Creek Database. (Id.) Fetter is not even certain what
8  database the data he received from Golder came from. (Id.; Exh. 1:11:6-12:24)

## **WORK PRODUCT IMMUNITY**

10  The work product doctrine limits discovery of material obtained and prepared
11  by an attorney or the attorney's agent in anticipation of litigation or preparation for trial.
12  Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1945). The doctrine
13  establishes a qualified immunity, rather than a privilege, and the qualification of the
14  immunity is to be determined upon a showing of necessity or good cause. Id.; Admiral Ins.
15  Co. v. U.S. District Court, 881 F.2d 1486, 1494 (9th Cir.1989); Doubleday v. Ruh, 149
16  F.R.D. 601, 605 n. 3 (E.D.Cal.1993); United States v. City of Torrence, 163 F.R.D. 590, 592-
17  93 (C.D. Cal. 1995).

18  In an effort to address the inconsistent opinions in federal courts after Hickman,
19  in 1970, the Supreme Court adopted Federal Rule of Civil Procedure 26(b)(3), which
20  provides in relevant part:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant . . . or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

26  Fed.R.Civ.P. 26(b)(3); Southern Union Company v. Southwest Gas Corporation, 205 F.R.D.
27  542, 548-49 (D. Az 2002). Thus, the following conditions must be satisfied by the proponent
28  in order to establish work product protection: (1) the material must be a document or tangible

- 6 -

1  thing; (2) it must be prepared in anticipation of litigation; and (3) it must be prepared by or
2  for a party, or by or for its representative. Holmes v. Pension Plan of Bethlehem Steel Corp.,
3  213 F.3d 124, 138 (3d.Cir.2000);  Southern Union, 205 F.R.D. at 549.  Rule 26(b)(3)
4  expressly directs that the court shall protect against disclosure "the mental impressions,
5  conclusions, opinions, or legal theories of an attorney or other representative of a party
6  concerning the litigation."  The party claiming work product immunity has the burden of
7  proving the applicability of the doctrine. City of Torrence, 163 F.R.D. at 593; Holmes v.
8  Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d.Cir.2000); Nutmeg Ins. Co.
9  v. Atwell, Vogel & Sterling, 120 F.R.D. 504 (W.D.La.1988). The party seeking discovery
10 of facts known or opinions held by consulting experts who are not expected to be called as
11 trial witnesses, however, has the burden of demonstrating the existence of exceptional
12 circumstances to overcome the work product immunity. Roesberg v. Johns-Manville Corp.,
13 85 F.R.D. 292 (E.D.Pa.1980);  Hartford Fire Ins. Co. v. Pure Air on the Lake, Ltd., 154
14 F.R.D. 202, 207 (N.D. Ind. 1993). This latter burden has been characterized as a "heavy" one,
15 In re Shell Oil Refinery, 132 F.R.D. 437, 442 (E.D.La.1990), clarified by 134 F.R.D. 148
16 (E.D.La.1990), but "is not an 'impenetrable fortress' against discovery and parties seeking
17 discovery can make a showing of exceptional circumstances when there is no practicable
18 alternative by which they can obtain the information." Hartford Fire Ins. Co., 154 F.R.D. at
19 207.

20         Case law has determined that there are two types of work product, ordinary
21 work product and opinion work product. Southern Union, 205 F.R.D. at 549. "Generally,
22 opinion work product, including the mental impressions, conclusions, opinions, or legal
23 theories of an attorney, is entitled to nearly absolute protection." Id.; Holmgren v. State Farm
24 Mutual Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir.1992) (holding that opinion work product
25 is entitled to nearly absolute protection with limited exceptions). "Ordinary work product,
26 by contrast, is subject to disclosure upon a showing by the party seeking discovery of
27 substantial need and its inability to obtain the materials by other means." Southern Union,
28 205 F.R.D. at 549; Upjohn Co. v. United States, 449 U.S. 383, 401 (1981) (declining to

1  decide whether opinion work product is entitled to absolute protection but recognizing that
2  ordinary work product is discoverable upon a showing of substantial need and inability to
3  obtain materials without undue hardship).

4        "As originally articulated[,] . . . the purpose of the work product doctrine was
5  to preserve 'the historical and the necessary way in which lawyers act within the framework
6  of our system of jurisprudence to promote justice and to protect their clients' interests.' In
7  developing the work product doctrine the [Supreme] court focused exclusively on the privacy
8  interests of lawyers, on shielding 'the privacy of an attorney's course of preparation.' " City
9  of Torrence, 163 F.R.D. at 593 (citing Hewlett-Packard Co. v. Bausch & Lomb, Inc., 116
10 F.R.D. 533, 538 (N.D.Colo.1987)). "One of the primary purposes of the work product
11 immunity is to prevent one party from exploiting the other party's efforts to prepare for
12 litigation." City of Torrence, 163 F.R.D. at 593 (citing Admiral Ins. Co., 881 F.2d at 1494).
13 "'[T]he private mental impressions and legal theories of counsel' are the work product to be
14 protected." City of Torrence, 163 F.R.D. at 593 (citing Intermedics, Inc. v. Ventritex, Inc.,
15 139 F.R.D. 384, 391 (N.D.Ca.1991), aff'd without op. 991 F.2d 808 (Fed.Cir.1993)). Counsel
16 must be afforded the opportunity "to think dispassionately and creatively about his client's
17 case in private [and] . . . to . . . have [] uninhibited, roaming, educational interchanges with
18 experts. . . ." Id. at 392. When counsel, however, forwards documents prepared by a
19 non-testifying consultant to a testifying expert, they become discoverable. Any protection
20 the documents may have had no longer applies. "In general, the work-product privilege has
21 been held not to apply to opinions and documents generated *or consulted* by an expert
22 retained to testify at trial." City of Torrence, 163 F.R.D. at 593 (citing County of Suffolk v.
23 Long Island Lighting Co., 122 F.R.D. 120, 122 (E.D.N.Y.1988)) (emphasis added.) (citations
24 omitted.)  Rule 26(b)(4) "has been broadly interpreted to authorize disclosure of both expert
25 opinions and 'all the documents the expert generated *or examined* in the process of forming
26 those opinions.' " Id., (quoting Hewlett-Packard, 116 F.R.D. at 536) (emphasis in original).
27 "[A]bsent an extraordinary showing of unfairness that goes well beyond the interest generally
28 protected by the work product doctrine, written and oral communications from a lawyer to

1 an expert that are related to matters about which the expert will offer testimony are
2 discoverable, even when those communications would be deemed opinion work product."
3 City of Torrence, 163 F.R.D. at 593 (citing Intermedics, 139 F.R.D. at 387).

4       "Discovery of documents shown to an expert, but not retained in the expert's
5 file, assures the 'independence of the expert's thinking, both her analysis and her conclusions.
6 The risk is that the lawyer will do the thinking for the expert, or, more subtly, that the expert
7 will be influenced, perhaps appreciably, by the way the lawyer presents or discusses the
8 information.'" City of Torrence, 163 F.R.D. at 593 (citing Intermedics, 139 F.R.D. at 393).
9 "What the [Advisory] Committee sought to promote [in the 1970 amendments to Rule 26]
10 was a fair opportunity to expose whatever weaknesses, unreliabilities, or biases might infect
11 the opinions of testifying experts called by adverse party. Id. at 389.  Pursuit of such fairness
12 would have been thoroughly frustrated if the rule prohibited a party from showing that the
13 opinions an expert was presenting at trial as his own had in fact been spoon fed to him and
14 written for him by the lawyer who retained him." Id. at 389; City of Torrence, 163 F.R.D. at
15 593.

16       "A number of cases hold that 'exceptional circumstances' allowing for
17 discovery of a non-testifying expert's opinion exist where the object or condition observed
18 is not observable by an expert of the party seeking discovery." Hartford Fire Ins. Co., 154
19 F.R.D. at 208 (citing Delcastor, Inc. v. Vail Assoc., 108 F.R.D. 405, 409 (D. Colo. 1985);
20 Dixon v. Cappellini, 88 F.R.D. 1 (M.D. Pa.1980) (citations omitted). Likewise, exceptional
21 circumstances has been shown where a non-testifying expert's report will be used by a
22 testifying expert as the basis for an expert opinion. Id. (citing, Heitmann v. Concrete Pipe
23 Machinery, 98 F.R.D. 740 (E.D.Missouri 1983)). "In sum, Rule 26(b)(4)(B) 'is based on a
24 concept of fairness.'" Id. (citation omitted)  "As such, issues arising under Rule 26(b)(4)(B)
25 are resolvable only on a case-by-case basis." Id.

26       In Derrickson v. Circuit City Stores, Inc., 1999 WL 1456538 (D. Md.),
27 affirmed in 203 F.3d 821 (4th Cir. 2000), an employment discrimination case, plaintiff's
28 expert witness presented various tables regarding compensation and promotions at Circuit

- 9 -

1  City and based his opinion in part on the information in those tables. The tables, however,
2  were based on data that was subjected to various selection, aggregation and weighting
3  processes performed by the assistant of plaintiff's expert witness. Plaintiff's expert testified
4  at deposition that he told his assistant in general terms what manipulations and analyses he
5  wanted performed on the data. His assistant then wrote a series of computer instructions
6  using a commercially available statistics program that analyzed the data and produced the
7  tables upon which the expert relied.

8  The district court in Derrickson wrote that it "need not waste its time analyzing
9  the work of the expert's assistant as the work of a so-called 'non-testifying' expert" because
10 plaintiff's expert and his assistant "worked hand-in-glove, and the fruits of their labor are
11 indivisible. Defendant cannot properly cross-examine [the expert] without first understanding
12 how his assistant manipulated the data. . .[The expert's] opinions in this matter are the result
13 of a seamless collaboration with his assistant. Under these circumstances, Defendant is
14 entitled to know what [the expert's] assistant did." 1999 WL 1456538 *7.

15 The district court continued:

16 > Even if the court considered [the expert's] assistant to be a non-testifying expert, the result would be the same. Defendant is not engaging
17 > in the sort of free riding that Rule 26(b)(4)(B) was meant to prevent. The purpose of Rule 26(b)(4)(B) is to prevent a party from building its own case
18 > through its opponent's diligence. (citation omitted). In this instance, Defendant does not seek to build its own case with [the expert's] work but rather seeks to
19 > tear down Plaintiffs' case. That is entirely proper. Moreover, Rule 26(b)(4)(B) provides that the "facts known and the opinions held by an expert . . . who is
20 > not expected to be called at trial" are discoverable "upon a showing of exceptional circumstances under which it is impracticable for the party seeking
21 > discovery to obtain facts or opinions on the same subject by other means." Only [the expert's] assistant knows what he did to the data, and because that
22 > information is exclusively within the assistant's cognizance, Defendant is entitled to it under Rule 26(b)(4)(B).(citation omitted).
23

24 Id. Moreover, the district court opined that Defendant was entitled to take the deposition of
25 plaintiff's expert's assistant. Id. at n. 1.

26 **DISCUSSION**

27 There is no dispute here that what BHP is seeking falls within the definition
28 of work product: the requested materials are documents or tangible things prepared in

- 10 -

1 anticipation of (or during) litigation by PDMI/Inspiration's representative, Golder. The issue,
2 however, is whether BHP has demonstrated the requisite exceptional circumstances that in
3 all fairness the materials it seeks from Golder should be disclosed pursuant to Fed.R.Civ.P.
4 26(b)(3) for each of the three expert witnesses. The Court concludes that BHP has
5 sufficiently demonstrated that exceptional circumstances do exist to overcome
6 PDMI/Inspiration's work product immunity to Golder's work, i.e., BHP has substantial need
7 for the materials it seeks to effectively cross examine PDMI/Inspiration's three testifying
8 experts and is unable to obtain the materials by other means.

9       BHP's Motion, Reply and Response To PDMI/Inspiration's Supplemental
10 Exhibit etc., filed after Bethke's May 17, 2006 deposition, sufficiently demonstrate to the
11 Court's satisfaction that Golder and all three experts, Fetter, Bethke and Brown, have worked
12 hand-in-hand, like the "seamless collaboration" in Derrickson, and "directed Golder to
13 perform technical tasks and analysis and that [the experts] relied upon Golder's work in
14 forming their opinions." (docket # 1752 at 5) BHP demonstrates that "[i]n every one of the
15 recent expert Reports produced by Fetter, Bethke and Brown, the three experts inserted
16 charts, graphs and/or tables containing data and analyses provided by Golder. (Id. 5-6; Exh.
17 3) Golder has conducted most of the substantive data analysis underlying Fetter's opinions.
18 It is possible that Golder and, perhaps, PDMI/Inspiration's counsel have given significant
19 direction to the formulation of the three expert's opinions and updated reports. BHP should
20 be given a fair opportunity to prove that the expert opinions Fetter, Bethke and Brown will
21 be presenting at the Phase II trial are truly their own or whether any portion or all of their
22 opinions have "in fact been spoon fed to him and written for him by the lawyer who retained
23 him." City of Torrence, 163 F.R.D. at 593. Like the defendant in Derrickson, BHP does not
24 seek to build its own case with the discovery of Golder's work but rather BHP seeks to tear
25 down PDMI/Inspiration's case and their experts' opinions through effective cross
26 examination. This is entirely proper in our adversary process of truth finding.

27       PDMI/Inspiration's Response indicates, among others, that the documents BHP
28 seeks "have never been provided to, or reviewed by [PDMI/Inspiration's] testifying experts";

- 11 -

1  "[a]ll of the work Golder performed for the experts has been fully disclosed"; and
2  PDMI/Inspiration has already produced to BHP all documents and materials described in
3  three of the seven categories identifying by BHP. While these assertions may prove to be
4  true, BHP should not be bound by an adverse party's statements or similar statements by
5  adverse experts that they did not consider anything Golder or PDMI/Inspiration's counsel
6  may have orally communicated, showed to or shared with them. As discussed in the City of
7  Torrence case, "[t]he scope of discovery should not be limited to documents relied on by the
8  expert in support of his opinions, but should extend to documents 'considered but rejected
9  by the testifying expert in reaching opinions.' . . . '[I]n fact, the documents considered but
10 rejected by the expert trial witness could be even more important for cross-examination than
11 those actually relied upon by him.' " (citation omitted). City of Torrence, 163 F.R.D. at 594.
12 BHP is entitled to uncover facts and information to effectively cross-examine
13 PDMI/Inspiration's expert witnesses which constitute a showing sufficient to overcome the
14 work product immunity from discovery.
15        Accordingly,
16        **IT IS ORDERED** that BHP Copper, Inc.'s ("BHP") Motion To Compel
17 Production Of Experts' Work Files In The Possession Of Golder Associates, Inc. (docket #
18 1752) is **GRANTED**.
19        **IT IS FURTHER ORDERED** that PDMI and Inspiration shall produce to
20 BHP, to the extent that they have not already been produced, by **5:00 p.m. on July 12, 2006**,
21 the following documents:
22        1. All documents concerning communications between Golder and experts
23 Fetter, Bethke and Brown since June 1, 2003, including but not limited to notes,
24 presentations, letters, emails or other memoranda of conversations.
25        2. All documents making up Golder's project files concerning work done by
26 Golder for Fetter, Bethke and Brown, since June 1, 2003, as stated in their Supplemental
27 Reports as well as any drafts of said Reports that were received, commented upon, or
28 revised (in part or whole) by Golder.

3. All documents related to work that Golder has performed at the request of Fetter, Bethke and Brown and/or Counsel for PDMI /Inspiration, since June 1, 2003, related to these experts' Supplemental Reports, including but not limited to data gathering, water chemistry, well sampling, hydraulic conductivity, mass flux and ground water elevation as well as any drafts of Fetter's, Bethke's and Brown's Supplemental Reports or portions thereof that were received, commented upon, or revised (in part or whole) by Golder.

4. All documents, including the hard copy and a copy in an electronic format as could be uploaded or downloaded, that were placed on Golder's FTP site concerning Fetter's, Bethke's and Brown's Supplemental Reports, since June 1, 2003.

5. All documents within Golder's knowledge that were conveyed to Fetter, Bethke and Brown from Golder whether directly or indirectly, either by Golder or through a third party such as Counsel for PDMI and/or Inspiration, since June 1, 2003.

6. All documents concerning communications with Counsel for PDMI / Inspiration relating to the subject matter of Fetter's, Bethke's and Brown's Supplemental Reports, since June 1, 2003.

7. All documents concerning communications with PDMI/Inspiration relating to the subject matter of Fetter's, Bethke's and Brown's Supplemental Reports, since June 1, 2003.

8. All invoices by Golder, in unredacted form, regarding work that Golder has done for Fetter, Bethke and Brown or related to the subject matter in Fetter's, Bethke's and Brown's Supplemental Reports, since June 1, 2003.

9. All documents in Bethke's and Golder's possession showing the integrated licensing agreements and business relationship between Bethke and Golder outside their relationship in this case including documents evidencing the royalty and consultant payments thereon to Bethke and Golder.

10. A privilege log detailing any documents or communications requested under paragraphs one through nine but not produced under a claim of privilege other than

1  work product privilege. The privilege log should include: the type of document; its
2  author(s); its addressee(s); its recipient(s) (including recipients of copies); its date; its
3  general subject matter; the nature of the claim or privilege asserted, and that part or
4  portion of the document for which the privilege is asserted.

5        **IT IS FURTHER ORDERED** that BHP is hereby authorized to promptly
6  depose appropriate Golder personnel after PDMI/Inspiration's complete compliance with
7  this Order consistent with this Order and Rule 26(b)(4)(B), FED.R.CIV.P.

8        DATED this 30th day of June, 2006.

_/s/ Lawrence O. Anderson_
Lawrence O. Anderson
United States Magistrate Judge